UNITED STATES of America, Respondent–Appellee,

v.

Jack ROBISON, Petitioner–Appellant.

Nos. 90–1149, 90–1279.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 30, 1990.

Decided Jan. 29, 1991.

Jack Robison, Fairton, N.J., pro se.

Robert W. Donaldson, Asst. U.S. Atty., Detroit, Mich., for respondent-appellee.

Before MARTIN and JONES, Circuit Judges; and EDGAR, District Judge.*

EDGAR, District Judge.

Petitioner-appellant Jack Robison appeals the district court's denial of his motion to vacate or set aside his sentence. He argues that his sentence was imposed in violation of a plea agreement entered in the Eastern District of North Carolina. As we find no breach of the agreement, we AFFIRM.

I.

Robison, a participant in a multistate marijuana importation scheme, was indicted on June 13, 1986, in the Eastern District

* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes-

see, sitting by designation.

of North Carolina for interstate travel in aid of racketeering. On June 20, 1986, he was indicted in the Eastern District of Michigan on various other marijuana trafficking charges. Pursuant to a plea agreement dated October 16, 1986, he pled guilty in the Eastern District of North Carolina to two counts of unlawfully traveling between Michigan and North Carolina to possess marijuana with the intent to distribute it. This plea agreement contained the following provision: "The Government agrees ... [t]hat the defendant will not be further prosecuted for any activities which arose in the Western District of Louisiana." On November 12, 1986, Robison, represented by counsel, pled guilty in the Eastern District of Michigan to attempting to possess with intent to distribute approximately 300,000 pounds of marijuana. This marijuana had been brought into Louisiana by an ocean going tugboat named "Bull Dog." Robison's role in the "Bull Dog" load was to arrange, from a location in Detroit, for trucks to transport the marijuana from Louisiana to Detroit. Robison also went to Louisiana and hauled one load himself.

On December 8, 1986, Robison was sentenced in the Eastern District of North Carolina to imprisonment for a term of five years followed by five years of probation and a $20,000 fine. On February 27, 1987, he was sentenced in the Eastern District of Michigan to a term of seven years to run concurrent with the North Carolina sentence.

Through counsel on June 22, 1987, Robison filed a post plea motion to reduce his sentence under Fed.R.Crim.P. 35. This motion was denied by the district court. Finally, on June 15, 1989, the defendant filed *pro se* a motion to vacate and set aside the Eastern District of Michigan sentence asserting that the North Carolina plea agreement had given him "blanket immunity" from prosecution in the Eastern District of Michigan for the "Bull Dog" activities. The district court denied this motion.

## II.

■ In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court gave formal approval to plea bargaining as an essential and desirable practice in the administration of criminal justice and noted that the considerations justifying the practice "presuppose fairness in securing agreement between an accused and a prosecutor." *Id.* at 261, 92 S.Ct. at 498. "As a general rule, fundamental fairness means that the courts will enforce promises made during the plea bargaining process that induce a criminal defendant to waive his constitutional rights and plead guilty." *Staten v. Neal*, 880 F.2d 962, 963 (7th Cir.1989). In the present case, "[t]here is no question that an agreement was reached ... nor that [the] defendant has fully performed by pleading guilty, so that he is entitled to an appropriate remedy if the Government has breached the agreement." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (citing *Santobello*, 404 U.S. 257, 92 S.Ct. at 496). Where a defendant fulfills his promise in entering a guilty plea, the prosecution is bound to fulfill any promise made in exchange. *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499.

Robison raises the issue whether a United States Attorney in one judicial district may bind another in a plea agreement. *See United States v. Carter*, 454 F.2d 426 (4th Cir.1972) (en banc), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974) (United States Attorneys in different districts are bound by one another's plea agreements unless the agreement expressly provides otherwise). *But see United States v. Annabi*, 771 F.2d 670 (2d Cir. 1985) (United States Attorneys are not bound by one another's plea agreements unless such an agreement "affirmatively appears" from the record.). However, this issue need not be addressed here because of the particular facts of this case.

■ Plea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law. *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir.1986); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v.*

*Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980). The issue here is what was the content of the plea bargain between Robison and the United States Attorney for the Eastern District of North Carolina. This is a question of fact to be resolved by the district court. Those findings are reviewed under a clearly erroneous standard on appeal. *Baker,* 781 F.2d at 90; *Krasn,* 614 F.2d at 1233.

■ There can be no contract without a "meeting of the minds." *Restatement (Second) of Contracts* § 17 comment c (1981). Whether or not there was a "meeting of the minds" depends, of course, on what the parties to the plea agreement intended. *See United States v. Alessi,* 544 F.2d 1139, 1153 (2d Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). The district court found that the parties to the North Carolina agreement never intended to limit prosecution in other districts. This determination is not clearly erroneous. In fact, the circumstances of this case strongly support the result reached by the district court. First, Robison was indicted in the Eastern District of Michigan well before he entered into the North Carolina plea agreement. The North Carolina plea agreement makes no mention of the Michigan indictment, even though that indictment makes specific reference to the events surrounding the "Bull Dog" marijuana. Second, when Robison later pled guilty in Michigan, he certainly knew that he was pleading guilty to the "Bull Dog" activity, which he described in detail in a colloquy with the district court. Yet, Robison did not bring his North Carolina plea agreement to the attention of the district court until two and one-half years after he was sentenced, and then only "after repeated self-study long after the event." Third, the investigation leading to the North Carolina indictment was unconnected to, and independent of the one resulting in the Michigan prosecution. *See United States v. DiNapoli,* 817 F.2d 978, 979 (2d Cir.1987). There is no indication whatsoever that the United States Attorney in the Eastern District of North Carolina had any thought of doing anything which would affect the separate prosecution of another United States Attorney, nor is there any allegation that the Michigan prosecution was ever discussed with the United States Attorney in North Carolina.

## III.

The circumstances of this case disclose that it was intended by neither the United States Attorney for the Eastern District of North Carolina nor Robison that the North Carolina plea agreement have any effect on the prosecution in the Eastern District of Michigan. The decision of the district court is AFFIRMED.