*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0161P (6th Cir.)
File Name: 00a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

GREGORY WELLS, M.D.
(98-6010); RONALD LEE
DILLION (98-6011),
    *Defendants-Appellants.*

Nos. 98-6010/6011

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 97-00016—Joseph M. Hood, District Judge.

Argued: December 6, 1999

Decided and Filed: May 10, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,[*]
District Judge.

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

## COUNSEL

**ARGUED:** Eldred E. Adams, Jr., ADAMS & ADAMS, Louisa, Kentucky, John K. West, McCOY, BAKER & WEST, Lexington, Kentucky, for Appellants. Patrick H. Molloy, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Eldred E. Adams, Jr., ADAMS & ADAMS, Louisa, Kentucky, John K. West, McCOY, BAKER & WEST, Lexington, Kentucky, for Appellants. Patrick H. Molloy, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

———————————

## OPINION

———————————

R. GUY COLE, JR., Circuit Judge. Defendants-Appellants Gregory Wells, M.D., and Ronald Lee Dillion appeal from their jury convictions on ten counts of narcotics crimes. The convictions all arise from Dr. Wells's prescriptions for thousands of dosages of controlled substances for the use and benefit of Dillion, a friend and patient. On appeal, Dr. Wells and Dillion raise multiple issues. None of Dr. Wells's claims have merit, and we AFFIRM his conviction. However, because the district court erred in the manner in which it assessed Dillion's claim that the government breached his plea agreement, we VACATE his sentence and REMAND Dillion's case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1983, the Kentucky Board of Medical Licensure licensed Dr. Wells to practice medicine in Kentucky. From that time until his trial in this case, Dr. Wells practiced general medicine in Inez, Kentucky. The Drug Enforcement Agency (DEA) issued Dr. Wells a registration number in August 1983

quotation omitted). Here, the district court was clearly aware of its discretion to depart downward: it noted that it had received numerous letters on Dr. Wells's behalf and sua sponte considered, and rejected, a downward departure. Because the district court was aware of its discretion to depart downward, its refusal to do so is not reviewable by this court. *See id.*

## VI. CONCLUSION

After carefully reviewing the record, arguments, and briefs of the parties in this case, we AFFIRM the conviction of Dr. Wells, but VACATE Dillion's sentence and REMAND his case to the district court for further proceedings consistent with this opinion.

§ 2D1.1 applies.  Dr. Wells also argues that this was not a "street" transaction in which money was involved.  These arguments lack merit.  The indictment against Dr. Wells was not vindictive, and the jury convicted him of violating 21 U.S.C. § 841(a)(1).  Because the most applicable guideline to this offense is § 2D1.1, the district court did not err in applying it.

### B.  Weight of Carrier Medium

Dr. Wells argues that the district court erred in its calculation of the amount of drugs attributable to him because the court considered the weight of the carrier medium as well as that of the controlled substance.  As noted by the district court, § 2D1.1 provides that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  *See* U.S.S.G. § 2D1.1(c), note A.   Dr. Wells points to the reference to "total weight of the controlled substance" in application note 11 to § 2D1.1 to argue that only the weight of the controlled substance should have been considered rather than the weight of the entire mixture.

This court considered and rejected Dr. Wells's argument in *United States v. Landers,* 39 F.3d 643 (6th Cir. 1994).  This case presents essentially the same situation.  Thus, Dr. Wells's argument does not provide a basis for resentencing.

### C.  Downward Departure

Dr. Wells argues that the district court erred by failing to depart downward in his sentence based upon his exemplary community service.  The government submits that this issue is not properly before the court.  The government is correct.  A sentence conforming to the guideline range cannot be appealed based on the district court's refusal to depart downward in sentence unless the district court "incorrectly believed that [it] lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines."  *Landers*, 39 F.3d at 649 (citation and

which authorized Dr. Wells to write prescriptions for controlled substances in accordance with 21 U.S.C. § 801 et seq.  The Kentucky Board of Medical Licensure suspended Dr. Wells's capacity to write prescriptions for narcotics in October 1995.[1]

Ronald Lee Dillion, a former Kentucky State Police officer, became a patient of Dr. Wells in 1994.  Dillion saw Dr. Wells for a neck and back ailment and for a blood disorder.  Dillion took a prescription pain medication, Lorcet, to treat the pain associated with his neck and back problems.  In addition to their professional relationship, Dr. Wells and Dillion were friends who talked with each other frequently and took at least one trip together.

Following an investigation that began as a Medicaid fraud investigation centered on Dr. Wells, the government filed a seven-count indictment against Dr. Wells and Dillion on June 18, 1997.  The first count charged Dr. Wells and Dillion with conspiring to acquire and obtain controlled substances by misrepresentation, fraud, deception, or subterfuge, in violation of 21 U.S.C. §§ 846 and 843(a)(3).  Counts two through six alleged that Dr. Wells had written prescriptions which Dillion had used to obtain Schedule II and Schedule III controlled substances, *see* 21 U.S.C. § 812, and charged the two men with aiding and abetting one another in knowingly and intentionally acquiring and obtaining the drugs by misrepresentation, fraud, deception and subterfuge, in violation of  21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.  The final count charged Dr. Wells and Dillion with aiding and abetting one another in obtaining Lorcet, a Schedule III narcotic, and alleged that Dr. Wells had written prescriptions for Dillion that were outside the scope of appropriate medical practice, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.  Both defendants pleaded not guilty to all seven counts.

---

[1]The record before us does not detail the circumstances surrounding the Board's suspension of Dr. Wells's prescription privilege.

On November 20, 1997, the government filed a superseding indictment against Dr. Wells and Dillion. The superseding indictment included the first six counts from the original indictment, but added several new counts. Count seven charged Dr. Wells and Dillion with aiding and abetting one another in illegally dispensing and distributing Tylox, a Schedule II narcotic, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count seven alleged that Dr. Wells had written, outside the scope of appropriate medical practice and not for a legitimate medical purpose, a prescription for Tylox in the name of a third person, but actually intended the drug for Dillion. Counts eight through twelve of the superseding indictment charged both defendants with five other instances of aiding and abetting each other in illegally distributing and dispensing Schedule II narcotics by prescribing them for a third party but intending them for Dillion. Both defendants pleaded not guilty to the charges in the superseding indictment.[2]

On August 5, 1996, Dillion entered into a plea agreement with the government. In March 1997, the government informed Dillion that it considered the agreement to be null and void because Dillion had failed to cooperate under the agreement. Dillion moved to enforce the plea agreement on August 15, 1997, but the court denied the motion on October 30, 1997.

Dr. Wells and Dillion were tried by a jury. At the close of evidence, the defendants moved for acquittal. The court denied the motion on ten of the counts, but granted it as to counts three and six, because the government failed to prove under those counts that the third parties for whom Dr. Wells had prescribed drugs had not actually received the drugs. After the jury found both defendants guilty of the remaining ten counts, the court sentenced Dr. Wells to a total of 78 months' imprisonment, three years of supervised release, and

---

[2]On January 22, 1998, the government filed a second superseding indictment against Dr. Wells and Dillion which did not differ in any way material to this appeal.

## V.  SENTENCING ISSUES

### A.  Base Offense Level

Dr. Wells argues that the district court erred by applying U.S.S.G. § 2D1.1 rather than § 2D2.2 in calculating his base offense level.[10] Dr. Wells argues that his offense was more akin to acquiring a controlled substance by fraud, the offense to which § 2D2.2 corresponds, than to distributing controlled substances, which is covered by § 2D1.1. The district court rejected this argument because Dr. Wells was convicted of distribution in addition to obtaining controlled substances by fraud.

We review the application of a guideline to a particular set of facts de novo. *See United States v. Childers,* 86 F.3d 562, 563 (6th Cir. 1996). The offense guideline most applicable to the offense of conviction should be used in determining a defendant's base offense level. *See* U.S.S.G. § 1B1.2(a). Section 2D1.1 is the appropriate sentencing guideline for the unlawful manufacturing, importing, exporting, or trafficking of controlled substances, *see* U.S.S.G. § 2D1.1, and serves as the reference point for violations of 21 U.S.C. § 841(a)(1). *See* U.S.S.G. App. A. In contrast, § 2D2.2 is the appropriate sentencing guideline for acquiring a controlled substance by forgery, fraud, deception, or subterfuge in violation of 21 U.S.C. § 843(a)(3). *See* U.S.S.G. § 2D2.2.

Dr. Wells contends that the district court erred because he was originally indicted under 21 U.S.C. § 843(a)(1) and it was the "vindictive" superseding indictment that included the more serious 21 U.S.C. § 841(a)(1) violations to which

---

[10]Dillion echoes Dr. Wells's argument that the district court applied the wrong base offense level in computing his sentence. Because Dillion's sentence will change if the district court finds that his plea agreement is enforceable, we do not address his argument here. Nonetheless, we see no reason why our conclusion about Dillion's argument would be any different from the conclusion we reach about Dr. Wells's argument regarding the base offense level.

whole, were confusing, misleading and prejudicial. *See United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir. 1995) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)). Our inquiry into jury instructions is limited to whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion. *See id* at 1430 (citation omitted). A particular jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 US. 141, 146-47 (1973). Upon our review of all the jury instructions in this case, we are convinced that the jury was aware that to return a guilty verdict, it had to find that Dillion knowingly acquired controlled substances by doing something deceitful or untruthful. The district court did not err.

Dr. Wells also argues that the court's jury instructions regarding the charges pursuant to 21 U.S.C. § 841(a)(1) were erroneous because they permitted the jury to find Dr. Wells guilty of "simple medical malpractice" without finding him guilty of the proscribed offense of distributing controlled substances. We disagree. The district court instructed the jury that is must find the following elements beyond a reasonable doubt in order to return a guilty verdict: "(A) First, that [Dr. Wells] knowingly or intentionally distributed the controlled substance named in that count; and (B) Second, that he distributed such controlled substance outside the course of professional practice and not for a legitimate medical purpose." As the government points out, the judge defined "distribute" for the jury as meaning "to unlawfully transfer or to cause the unlawful transfer of a controlled substance from one person to another." Thus, the jury was aware that in order to convict Dr. Wells, it had to find that he unlawfully transferred (or caused the transfer of) controlled substances to another person and not that he simply prescribed medications in a negligent manner. The instructions were sufficient.

a $1,000 assessment, and Dillion to a total of 63 months' imprisonment, three years of supervised release, and a $1,000 assessment. Both Dr. Wells and Dillion filed timely notices of appeal.

## II. DILLION'S PLEA AGREEMENT

Dillion's first argument on appeal is that the district court abused its discretion by failing to enforce his plea agreement with the government. Dillion claims that the government failed to prove by a preponderance of the evidence that Dillion had materially and substantially breached the agreement. The government responds that, due to his drug addiction, Dillion breached the agreement by being unable to comply with its terms and by failing to provide useful information. The government also argues that Dillion breached the plea agreement by failing to obtain treatment for his drug addiction.[3]

---

[3]The government also argues that, although both parties signed the agreement, the agreement is not binding because the court never accepted it. It is, of course, true that a plea agreement is not binding on the court until it accepts the agreement. *See* Fed. R. Crim. P. 11. Whether a signed plea agreement may be binding on the government prior to acceptance by the court is a different matter. Although some courts have found that a plea agreement is not enforceable against the government until it is accepted by the trial court, *see, e.g., United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980), others have enforced agreements even where the trial court has not yet approved them, *see, e.g., United States v. Mozer*, 828 F. Supp. 208, 214-16 (S.D.N.Y. 1993); *see also United States v. Fitch*, 964 F.2d 571, 575 (6th Cir. 1992) (holding that informal immunity agreement is binding on government where defendant did not materially breach agreement). If Dillion substantially relied on the plea agreement, or was prejudiced by providing information which the government used in its ongoing investigation or at trial, we think that the contract would be -- in the absence of breach by Dillion -- binding on the government. *See United States v. Brown*, 801 F.2d 352, 355 (8th Cir. 1986) (stating that if district court determines on remand that defendant did not breach cooperation agreement entered into with government, "fundamental fairness requires the government to uphold its part of the agreement and the district court may enforce the agreement."); *see also United States v. Aguilera*, 654 F.2d 352, 354 (5th Cir. 1981); *Ocanas*, 628 F.2d at 358. We leave it to the lower court to resolve the factual issues of reliance and

## A. Background of the Plea Agreement

Under his written plea agreement, Dillion agreed to plead guilty to conspiracy to obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of 21 U.S.C. §§ 846 and 843(a)(3), and "to fully cooperate" with the government in its investigation and prosecution of related criminal activity. In return, the government agreed to limit its prosecution of Dillion's involvement in the narcotics crime to the conspiracy charge. The government also agreed, in the event that Dillion provided "substantial assistance" in its investigation and prosecution, to consider filing a U.S.S.G § 5K1.1 motion requesting the district court to impose a sentence below the established guideline range. The agreement was absolutely clear that it "constitute[d] the entire Plea Agreement between the United States and the defendant," and that it "supersede[d] all prior understandings, promises and /or representations, if any, whether written or oral, which may have existed between the parties hereto."

On the day that the parties signed the agreement, Dillion met with government investigators and the AUSA for most of the day. Dillion provided the government with information at that time, although the parties disagree over how helpful the information proved to be. Dillion met with government investigators on one more occasion, on August 9, 1996. After the second meeting, the government made several attempts to schedule further meetings through Dillion's attorney, but none of the meetings came to fruition. In March 1997, the government informed Dillion's attorney by letter that the government considered the plea agreement null and void because Dillion had failed to cooperate with the government. In August 1997, Dillion filed a motion to enforce the plea agreement. After a hearing at which several witnesses testified, the district court issued a written order denying

---

prejudice in its evaluation of whether Dillion fulfilled his obligations under the plea agreement.

court erred in excluding Dr. Walker's testimony, we are satisfied that Dr. Well's right to a fair trial was not undermined by exclusion of that testimony.

## IV. OTHER ISSUES

### A. Prosecutorial Vindictiveness

Dr. Wells argues that the superseding indictment filed by the government represents a case of prosecutorial vindictiveness because its sole purpose was to impose drastic penalties on him and because it was not the result of new information acquired subsequent to the original indictment. The claim fails. To establish vindictive prosecution, a defendant must show that the prosecutor has some personal "stake" in deterring the defendant's exercise of his constitutional rights, and that the prosecutor's conduct was unreasonable. *See United States v. Branham*, 97 F.3d 835, 849-50 (6th Cir. 1996) (citations omitted). Because there is nothing in the record to suggest that the government's attorney had a stake in the prosecution of Dr. Wells, or that he acted unreasonably, the claim fails.

### B. Jury Instructions

Dr. Wells argues that the jury instructions regarding his alleged violations of 21 U.S.C. § 843(a)(3) were improper because they failed to explain the legal meanings of words used in the statute. As part of its instructions to the jury, the court told the jury that in order to convict Dr. Wells it must find the following: "First, that the crime of knowingly and intentionally acquiring or obtaining possession of controlled substances by misrepresentation, fraud, forgery, deception or subterfuge, as charged in counts 2, 4, and 5, was committed by Ronald Lee Dillion." Dr. Wells argues that "misrepresentation, fraud, forgery, deception or subterfuge" have special legal meanings and proposed instructions of his own.

This court may reverse a judgment on the basis of improper jury instructions only if the instructions, when viewed as a

patient. The evidence was sufficient for a rational jury to convict Dr. Wells on counts two, four, and five.

### D.  Exclusion of Testimony by Dr. Wells's Expert

Dr. Wells also argues that the district court erred by excluding testimony from his expert, Dr. Walker, related to whether Adkins had asked Dillion to help her obtain prescription medication from Dr. Wells for her back pain. A prescription for acetaminophen with codeine in the name of Adkins was the subject of count five of the indictment. Adkins testified that although she had asked Dillion to obtain Albuterol, a medication she took for a chronic problem with her breathing, from Dr. Wells on two or three occasions when her own doctor was out of town, Dillion had never obtained acetaminophen with codeine for her, and she had never met nor spoken with Dr. Wells. When, later in the trial, the defense asked its expert, Dr. Walker, whether Tylenol No. 4 (*i.e.,* acetaminophen with codeine) would be an appropriate medication for someone with back pain, the government objected -- out of hearing of the jury -- on the basis that Adkins had never testified to having any back pain. At the government's request, the district judge informed the jury that it must disregard Dr. Walker's testimony regarding the pain medication because Adkins testified that she had never asked Dillion to obtain medication for her back problems.

We will uphold the trial judge's ruling on the admissibility of evidence unless it is an abuse of discretion. *Bonds*, 12 F.3d at 554. A trial court's abuse of discretion is harmless and does not require a new trial unless it affects a substantial right. *See id.* The government's basis for its objection was wrong: Adkins did testify to having back pain and to taking a prescription medication for it. Nonetheless, the information that the district judge gave the jury -- that Adkins had testified that she never asked Dillion for back pain medication -- was correct. The trial court's decision to exclude the expert testimony regarding the medication Adkins took for her pain was presumably made on the basis that it was not relevant. *See* Fed. R. Evid. 401. Regardless of whether the district

Dillion's motion and finding that Dillion "failed to fulfill his obligations under the plea agreement."

### B.  Standard of Review and Governing Principles

"Plea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991). Questions regarding the content of the plea agreement are questions of fact; this court reviews the district court's determination of those questions for clear error. *Id.* However, whether the government's conduct violated the agreement is a question of law that we review de novo. *See United States v. Hawley*, 93 F.3d 682, 690 (10th Cir. 1996); *United States v. Valencia*, 985 F.2d 758, 760 (5th Cir. 1993). The trial court should hold the government to "a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in . . . plea agreements." *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992) (citation and quotation omitted). Although the burden is on the government to show by a preponderance of the evidence that the defendant breached the agreement, *United States v. Benjamin*, 138 F.3d 1069, 1074 (6th Cir. 1998), a defendant who breaches a plea agreement forfeits any right to its enforcement. *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) (citation omitted).

### C.  Discussion

The district court based its conclusion that Dillion failed to fulfill his obligations under the plea agreement on two facts: 1) that Dillion "failed to get 'clean,'" and 2) that Dillion failed "to provide the assistance needed." The court's reasoning raises two problems. First, the court clearly erred in relying upon Dillion's alleged promise to obtain drug treatment in concluding that he breached the plea agreement. The government's protestations notwithstanding, the plea agreement is completely devoid of any agreement that Dillion obtain drug treatment in order to fulfill his part of the bargain. The agreement could not be any more clear that it is the "complete and only Plea Agreement" between the government

and Dillion, and plainly states that "[t]he following additional promises have been made by the defendant: NONE[.]" Thus, the district court's reliance on any oral statements Dillion may have made that are not reflected in the written agreement is clear error.

The second problem with the district court's ruling is that it applied the wrong standard in determining whether Dillion fulfilled his obligations under the agreement. The agreement required Dillion to "fully cooperate" with the government in its further investigation and prosecution of criminal activity related to Dillion's and Dr. Wells's conspiracy. Yet, in its order, the district court characterized Dillion's agreement as a promise to provide "substantial assistance" in further investigations and prosecutions, and found that Dillion "did not, and could not, provide 'substantial assistance' to the United States" because he gave the government contradictory and unreliable information and failed to be a credible witness. This is problematic because it appears that the court evaluated Dillion's compliance with the plea agreement by looking to the government's conditional promise to file a § 5K1.1 motion (*i.e.,* if Dillion provided it with substantial assistance) instead of looking to Dillion's contractual obligation to "fully cooperate" with the government. Because Dillion expressly agreed to "fully cooperate" with the government and not to "substantially assist[]" it, the proper analysis of his alleged breach should have focused on whether he fully cooperated with the government.

The difference between substantial assistance and full cooperation is not merely semantic. A defendant might fully cooperate with the government yet fail to provide information that substantially assists it. If that happened in this case, Dillion was not in breach of the plea agreement. Because this is a question of fact that the district court must resolve, we REMAND Dillion's case to the district court. On remand, the court should determine whether Dillion fully cooperated with the government according to the terms of the plea agreement, and not whether Dillion substantially assisted the government. In determining whether Dillion fully cooperated with the

twelve was outside the scope of medical practice. We are confident that a rational trier of fact could have found both Dillion and Dr. Wells guilty of the charges in counts seven through twelve.

Dr. Wells also argues that there was insufficient evidence to convict him of counts one, two, four, and five. He argues that he was improperly charged with conspiring to violate and with violating 21 U.S.C. § 843(a)(3) because the statute does not apply to physicians; thus, he cannot be guilty of violating the statute. This argument fails. As the government points out, the plain language of § 843(a)(3) applies to "any person" who "knowingly or intentionally . . . acquire[s] or obtain[s] possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge," 21 U.S.C. § 843(a)(3), and courts have not hesitated to apply § 843(a)(3) to physicians. *See, e.g., United States v. Antoon*, 933 F.2d 200 (3d Cir. 1991); *United States v. Blanton*, 730 F.2d 1425 (11th Cir. 1984). The case Dr. Wells cites to stand for the proposition that the statute applies only to pharmacists, *United States v. Limberopoulos*, 26 F.3d 245 (1st Cir. 1994), cites *United States v. Devous*, 764 F.2d 1349 (10th Cir. 1985), in which the court affirmed the conviction of a physician pursuant to § 843(a)(3). Dr. Wells's claim with respect to count one has no merit.

Further, there was sufficient evidence for a rational jury to find Dr. Wells guilty beyond a reasonable doubt of the crimes alleged in counts two, four, and five. *See Jackson*, 443 U.S. at 319. The government put on evidence showing that Dillion was in possession of several of Dr. Wells's prescription pads and individual prescriptions from Dr. Wells, some of which were signed. The government showed that Margaret Friend, the mother of one of Dillion's ex-wives and in whose name the prescription that is the subject of count two was written, never received a prescription from Dr. Wells and did not even know the man. The government made a similar showing regarding count four, and put on evidence that Joyce Adkins, Dillion's sister and in whose name the prescription that is the subject of count five was written, never saw Dr. Wells as a

considering whether there is sufficient evidence to sustain a conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This court must uphold a jury verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it. *See Burks v. United States*, 437 U.S. 1, 17 (1978). In considering the evidence, we allow the government the benefit of all reasonable inferences and refrain from independently judging the weight of the evidence. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996).

Counts seven through twelve accused the defendants of aiding and abetting each other in distributing and dispensing controlled substances for the benefit of Dillion by prescribing the drugs for a third person, and doing so outside the scope of professional practice. The third person in whose name these drugs were prescribed was Arlie Boyd. The government put forward evidence that Dr. Wells ordered prescriptions for Boyd on the dates alleged in counts seven through twelve, that Boyd was not taking prescription medication at the time the prescriptions were dispensed, and that he never went to see Dr. Wells in person. In addition, the government showed that Dr. Wells ordered thousands of dosages of prescription medication for Boyd, ostensibly for symptoms associated with cancer, at a time when Boyd was cancer-free. Through its expert, Dr. Kennedy, the government showed that Dr. Wells's record on Boyd was minimal, and that each of the prescriptions that are the subjects of counts seven through

---

show: 1) the variance itself; and 2) that the variance affects a substantial right of the defendant. *Id.* Dr. Wells is unable to meet even the first prong of this test. In counts seven through twelve, the government charged Dr. Wells with knowingly and intentionally distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) by writing prescriptions for a third party but intending the drugs for Dillion. The government put on proof that Dr. Wells knowingly and intentionally prescribed drugs for Arlie Boyd so that Dillion could obtain them for himself. There was no variance between the charges and the proof.

government, the court should look to the requirements of the agreement itself and not to additional promises that either Dillion or the government made during plea negotiations. *See United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000) (stating that integration clause normally prevents criminal defendant who has entered into plea agreement from asserting that government made promises not contained in plea agreement itself).

### III.  EVIDENCE ISSUES

A. Admission of Expert Testimony Pursuant to Rule 16

Both Dr. Wells and Dillion argue that the district court erred by admitting expert testimony that it should have excluded.  First, appellants argue that the government failed to provide sufficient discovery pursuant to Fed. R. Crim. P. 16(a)(1)(E) in regard to the testimony of Dr. Douglas Kennedy, a government witness. Second, they argue that the government violated the requirements of Rule 16(a)(1)(E) by permitting Drs. Charles Hieronymus and Syed Badrudduja to testify as experts even though the government proffered them as lay witnesses.

Rule 16(a)(1)(E) requires the government to provide a defendant, at the defendant's request, with a written summary of expert testimony that it intends to use in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(E).  The summary must "describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." *Id.* The purpose of this rule is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.  We review the trial court's determination that expert testimony has met the requirements of Rule 16 for abuse of discretion. *See United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993); *United States v. Seiber*, No. 96-6463, 1998 WL 165153, at \*\*4 (6th Cir. Apr. 3, 1998).

Dillion and Dr. Wells do not dispute that the government provided them with Dr. Kennedy's qualifications prior to trial, but claim that Dr. Kennedy's testimony went well beyond the scope of the summary the government submitted to them. They protest in particular Dr. Kennedy's testimony regarding the requirements of establishing a doctor-patient relationship before prescribing controlled substances for a patient, and his testimony regarding Kentucky law requirements for prescribing controlled substances. We find these complaints to be unpersuasive.

Dr. Wells and Dillion should not have been surprised by Dr. Kennedy's testimony. Prior to trial, the government made available to the defense a copy of a report Dr. Kennedy had prepared in April 1996 regarding Dr. Wells for the Kentucky Board of Medical Licensure. The report detailed Dr. Kennedy's analysis of Dr. Wells's records of prescriptions of controlled substances and summarized Dr. Kennedy's conclusion that Dr. Wells had written numerous prescriptions without adequately documenting the medical necessity of the prescriptions. In addition, the government provided defense counsel with documents reviewed by Dr. Kennedy that showed the prescriptions Dr. Wells had written for Dillion's use, and a brief letter written by Dr. Kennedy in January 1998 which stated that Kennedy had reviewed both Dr. Wells's file on Dillion and the prescriptions written or ordered via telephone in Dillion's name. The letter clearly stated the ultimate point of Dr. Kennedy's testimony: "it is my opinion that the prescriptions as to each of the counts in the indictment are outside the scope of the professional practice and not for a legitimate medical purpose." Finally, the content and basis of Dr. Kennedy's testimony was the subject of a substantial amount of pretrial discourse, including the government's relatively detailed response to Dr. Wells's and Dillion's motion in limine to exclude Dr. Kennedy's testimony, and a hearing on the motion in which the government stated that Dr. Kennedy would testify that Dr. Wells's prescriptions were outside the scope of medical practice and not for any legitimate medical purpose.

benefit that were not specifically charged in the indictment. Prior to trial, the district court denied Dr. Wells's motion for a hearing to determine the admissibility of the prescriptions pursuant to *Merriweather*. The court ruled that the prescriptions were admissible as evidence of the conspiracy alleged in count one and as Rule 404(b) evidence as to the § 843(a)(3) charges alleged in counts two through seven of the original indictment. On appeal, Dr. Wells argues that the district court failed to make a specific finding regarding the admissibility of the 171 prescriptions pursuant to *Merriweather*.[8] Dr. Wells claims that some of the prescriptions were legitimate and that the government simply lumped together numerous prescriptions in order to improperly overwhelm the jury.

Upon review, we find that the district court did not abuse its discretion by admitting the prescriptions as acts in furtherance of the conspiracy alleged in count one. *See Merriweather*, 78 F.3d at 1078. Nor did the court err by admitting the prescriptions as to counts two through seven, as the evidence satisfies the three-step *Merriweather* analysis. *See id.* at 1076-77. Dr. Wells's claim fails.

### C. Sufficiency of the Evidence

Both Dillion and Dr. Wells claim that there was insufficient evidence to convict them of counts seven through twelve.[9] In

---

[8]Dr. Wells also argues that the district court must make *Merriweather* findings for the prescriptions admitted as to the conspiracy count. He is incorrect. As discussed, *supra*, *Merriweather* applies to evidence admitted pursuant to Rule 404(b) and does not require special findings for admission of non-Rule 404(b) evidence of a conspiracy.

[9]Wells argues that there was a "fatal variance" between counts seven through twelve and the government's proof at trial. This argument also fails. A 'variance' occurs when an indictment remains unchanged, "'but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Collins*, 78 F.3d 1021, 1032 (6th Cir. 1996) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). For an appellant to obtain a reversal due to a variance, he must

Prior to trial, the government moved to admit Exley's testimony. The court's ruling is altogether unclear, but the court appears to have granted the motion on the basis that it was admissible to show Dr. Well's specific intent as to the conspiracy charge in count one, and to show his intent to aid and abet Dillion in obtaining controlled substances by fraud and deception, *see* 21 U.S.C. § 843(a)(3), the subject of the charges in counts two through six. When the defense objected to Exley's testimony at trial, the court invoked Rule 404(b) to admit the evidence, finding that it showed Dr. Wells's intent "in this drug conspiracy." The court then found that the probative weight of the evidence outweighed the possibility of any undue prejudice. The defendants did not request a limiting instruction, and the court gave none to the jury.

Our review of the district court's admission of Rule 404(b) evidence is comprised of three steps. *See Johnson*, 27 F.3d at 1190 (citing *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992) (en banc)). First, we review for clear error the district court's finding that the prior act occurred. *Id.* Second, we review de novo the court's legal determination that the evidence was admissible for a legitimate purpose. *Id.* Third, we review for abuse of discretion the court's finding that the "other acts" evidence is more probative than prejudicial. *Id.* Applying this analysis, we first find that the district court did not clearly err in presuming that Dr. Wells's statement to Exley occurred. Further, although the district court should have been more clear about the purpose for which it admitted the testimony, it was admissible to show Dr. Wells's intent to conspire, *see Merriweather*, 78 F.3d at 1078, and to show that he intentionally -- and not unawares -- aided and abetted Dillion in obtaining controlled substances by fraud or deception, *see Johnson*, 27 F.3d at 1192. Finally, we find that the district court did not abuse its discretion in finding that the probative value of the testimony was not substantially outweighed by the danger of undue prejudice.

Dr. Wells also argues that the district court erred by admitting evidence of 171 prescriptions he wrote for Dillion's

In addition to knowing prior to trial the basis and general content of Dr. Kennedy's testimony, appellants had the opportunity to voir dire and cross-examine Dr. Kennedy extensively. That they may have *disagreed* with the content of his testimony is immaterial for purposes of Rule 16. They were on notice that Dr. Kennedy was going to testify that Dr. Wells's prescriptions for Dillion were outside the scope of medical practice and were not for a legitimate medical purpose, and they had a "fair opportunity" to refute this testimony. *See* Fed. R. Evid. 16 advisory committee's note to 1993 amendment. On the facts of this case, we hold that the government satisfied the requirements of Rule 16 and that the trial court did not abuse its discretion by admitting Dr. Kennedy's testimony.[4]

Dr. Wells and Dillion also argue that the district court erred by allowing Drs. Hieronymus and Badrudduja to render expert opinions regarding the treatment of Arlie Boyd[5] even though they had not been qualified as experts and had not provided summary reports as required by Rule 16(a)(1)(E). Prescriptions written by Dr. Wells in Boyd's name but intended for Dillion were the subject of counts seven through twelve. Dr. Hieronymus, a general practitioner, saw Boyd as

---

[4]Dr. Wells points to a comment the district judge made "in passing," Dr. Wells's Br. at 15, when he ruled that the information provided by the government satisfied the requirements of Rule 16. The judge seemed to indicate that, if the case had been civil instead of criminal, the information might not satisfy the requirements of Fed. R. Civ. P. 26. *See* Fed. R. Civ. P. 26. Dr. Wells argues on appeal that the requirements of Rule 16 should be construed at least as broadly as those of Fed. R. Civ. P. 26; and, because the district judge indicated that the government's disclosure would not meet the requirements of Rule 26, the court essentially found that the information provided by the government was insufficient. We need not address the relative breadth of Rule 16 and Fed. R. Civ. P. 26 here, as it is clear from the record that the district judge concluded that the government satisfied the requirements of Rule 16, and that is sufficient for us to find that the court's ruling was not an abuse of discretion.

[5]Boyd was Dillion's former father-in-law. He was dead at the time of trial.

a patient between March 1991 and December 1995.  Dr. Badrudduja, a general surgeon, saw Boyd as a patient from May 1994 through August 1997, and performed an operation on Boyd in June 1994 for cancer of the colon.  The testimony of Drs. Hieronymus and Badrudduja established that Boyd was cancer-free and that neither doctor prescribed medication for Boyd during the period between September 1994 through October 1995, when Dr. Wells prescribed controlled substances in Boyd's name but for Dillion's use.  Over defendants' objections, the district judge found that both doctors testified as fact witnesses, and not as experts.

The district court did not abuse its discretion by admitting the testimony as lay testimony.  Drs. Hieronymus and Badrudduja were treating physicians of Boyd, and they testified to their first-hand observations and treatment of him.  *See Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 218 (7th Cir. 1994) (stating that doctor is not an expert if his testimony is based on observations made in course of treatment, not acquired for purposes of trial, and based on personal knowledge); *Williams Enter., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 234 (D.C. Cir. 1991) (stating that a broker with specialized knowledge may offer opinion as lay witness as long as he had personal knowledge of facts).  Because the doctors testified as fact rather than expert witnesses, the government was not required to comply with Fed. R. Crim. P. 16(a)(1)(E) as to the doctors' testimony.

### B.  Admission of Rule 404(b) Evidence

Dr. Wells argues that the district court erred by admitting "other acts" evidence in two instances.  *See* Fed. R. Evid. 404(b).  Dr. Wells first argues that the trial court committed reversible error by permitting Wayne Exley, a Kentucky pharmacist, to testify about a conversation he had with Dr. Wells after the Kentucky Board of Medical Licensure stripped Dr. Wells of his ability to prescribe controlled substances in October 1995.  Exley testified that Dr. Wells attempted to "call in" a prescription for Dillion using the DEA registration number of his brother, also a physician: "[Dr. Wells] said that

Ronnie Dillion was in pretty bad shape, and he asked me to go ahead and fill a prescription for Lorcets and write it up as [if] his brother Dr. Raymond Wells . . . had called it in."  Dr. Wells objected to admission of the statement prior to trial and again at trial.

On appeal, Dr. Wells argues that the district court should have held a hearing to analyze the Exley statement pursuant to this court's ruling in *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996).  In *Merriweather*, we outlined the appropriate application of Rule 404(b).[6]  *Merriweather*, 78 F.3d at 1076-77.  First, upon the defendant's objection, the government must identify the specific purpose for which it offers the "other acts" evidence.  *Id.* at 1076.  Second, the district court must determine whether the identified purpose is material, or "in issue" in the case.  *Id.* at 1076-77.  Third, the court must weigh the evidence under Rule 403 to determine whether its probative value is substantially outweighed by the danger of unfair prejudice.  *Id.* at 1077.  Finally, the court must "'clearly, simply, and correctly' instruct the jury as to the specific purpose for which they [sic] may consider the evidence."  *Id.* (quoting *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994)).[7]

---

[6]Fed. R. Evid. 404(b) provides:  "Evidence of other crime, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  However, the rule allows such 'other acts' evidence for other purposes, such as to show knowledge or intent.  *Id.*  In determining whether to admit evidence under Rule 404(b) for 'other acts,' the court must balance the probative value of the evidence with the danger of undue prejudice in the manner required by Rule 403.  *See* Fed. R. Evid. 404(b) advisory committee's note.

[7]Dr. Wells does not argue that the judge failed to give a Rule 404(b) instruction.  Even had Dr. Wells argued this issue on appeal, the overwhelming evidence of the defendants' guilt in this case would compel us to conclude that the district judge's failure to give the instruction was harmless error.  *See United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir.), *cert. denied*, *Bilderbeck v. United States*, 120 S. Ct. 114 (1999).