**WEST TENNESSEE CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., and Zellner Construction Company, Inc., Plaintiffs,**

v.

**CITY OF MEMPHIS, Defendant.**

No. 99–2001.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 5, 2004.

Steven W. Dills, Esq., Stephen L. Shields, Esq., Jackson, Shields & Yeiser, Cordova, TN, Ralph D. Golden, Esq., Golden Law Firm, Linda Jew Mathis, Esq., Golden & Mathis, Memphis, TN, Robert J. Proctor, Esq., Bradley A. Hutchins, Esq., Proctor, Felton & Chambers, Atlanta, GA, for plaintiffs.

Felicia Izzard Corbin, Monika Lorice Johnson, Charmiane G. Claxton, Esq., Robert L.J. Spence, Jr., Esq., Spence Law Firm, PLLC, Memphis, TN, for defendant.

## ORDER DENYING PLAINTIFFS' MOTION IN LIMINE

DONALD, District Judge.

Plaintiffs brought this action pursuant to 42 U.S.C. §§ 1981 and 1983 challenging the enactment of a Minority/Women Business Enterprise ("MWBE") program by the City of Memphis ("City" or "Defendant"). The MWBE program requires the City to award a certain percentage of construction contracts to businesses owned by African–Americans and women. Presently before the Court is Plaintiffs' motion in limine to exclude the City's disparity study. For the following reasons, the motion is denied.

## I. Background

The City and other public entities commissioned a study, examining whether racial disparities existed in the procurement of contracts, including those for City construction projects. The disparity study, conducted by D.J. Miller & Associates, Inc. ("DJMA"), was presented to the City Council in 1994. Based on the study's statistics, the City Council passed Ordinance No. 4388 in 1996, to address alleged passive and active discrimination in its procurement of construction contracts. The plan requires a percentage of the amount spent on City contracts to be set aside for MWBEs.[1] If a non-MWBE bidding for City contracts does not meet those participation goals, its bid may be declared nonresponsive. Under some circumstances, however, a non-MWBE may obtain a waiver from the program's requirements.

Plaintiff West Tennessee Chapter of Associated Builders and Contractors, Incorporated is an organization whose members are businesses engaged in construction in the Memphis area. Its organizational purpose is to protect the practice of awarding contracts based on bid price and oppose measures such as Memphis' MWBE program. Plaintiff Zellner Construction Company, Incorporated is a non-MWBE contractor who was rejected from a City contract for failing to meet the minority participation goal.

Plaintiffs filed suit on January 4, 1999, challenging the MWBE program's constitutionality. They argued that, under the Equal Protection Clause, the City must have a compelling interest to legislate on the basis of racial classifications. According to Plaintiffs, the City's disparity study does not meet the evidentiary standards required to show a compelling interest. In 2001, Ordinance No. 4388's sunset provision took effect, and the City extended the MWBE program for another five years, to officially conclude in 2006.

On October 12, 2000, Plaintiffs served on Defendant an interrogatory seeking the identity of any expert witnesses Defendant intended to have testify at trial. Defendant responded that it had not yet identified any expert it would use, but would do so in a supplemental response. Defendant never supplemented its response and continues to

---

1. For purposes of the MWBE plan, an MWBE is an independent concern which is at least 51% owned, operated, and controlled by an African–American or a woman.

assert that it will not call any expert witnesses at trial.

Since the advent of litigation, DJMA has not been retained as an expert or consultant by the City. On the contrary, the City filed a third party complaint against DJMA, alleging breach of contract. DJMA was later dismissed from the suit pursuant to stipulation of the parties on June 24, 2002. (*See* Order of Dismissal as to D.J. Miller & Assoc. Only.)

On October 14, 2002, Plaintiffs deposed D.J. Miller and Sherry Williams Miller ("the Millers"), doing business as DJMA, pursuant to a subpoena *duces tecum* seeking "all documents supporting or in any way related to the underlying data, statistics, analysis, notes, findings and conclusions" of the study. (*See* Pls.' Mem. in Supp. of Mot. in Limine at 3.) The Millers produced a number of documents, though Plaintiffs allege that they did not produce all requested documents.

Plaintiffs subpoenaed DJMA and the Millers in order to obtain the non-produced lists. They also sent copies of the subpoenas to Defendant. Ms. Miller's deposition continued on June 12, 2003. She testified that she was unaware of the location of the missing documents. Defendant subsequently produced boxes of documents, which allegedly do not include the requested documents.

The Court declines to detail further Plaintiffs' arguments about the missing documents, since production of the documents is unrelated to the Millers' status as lay or expert witnesses at trial and the admissibility of the disparity study.

## II. Analysis

Plaintiffs argue that Defendant may not rely on the disparity study at trial because it is an expert report improperly proffered to the Court. Plaintiffs rely on a number of federal rules to adduce their proposed legal standard. First, they cite Federal Rule of Civil Procedure 26(a), requiring that a party disclose expert testimony prior to trial. (Pls.' Mem. in Supp. of Mot. in Limine at 7.) Next they cite Federal Rule of Evidence 701, which states that a non-expert witness:

is limited [at trial] to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Finally, Plaintiffs argue that Defendant's disparity study should have been produced to the Court under Federal Rule of Evidence 702, which requires that a scientific expert's testimony be properly grounded, well-reasoned, and not speculative in order to be admitted.

The effect of these rules taken together is to prohibit Defendant from relying upon the DJMA study at the trial of this case. Defendant has not designated DJMA or any of its principles or employees as an expert. Because DJMA is not designated as an expert, DJMA is a lay witness who cannot give opinion testimony that is based upon scientific, technical, or other specialized knowledge.

(*Id.*) Relying on *Harlow v. Eli Lilly and Company*, 1995 WL 319728, at *1, 1995 U.S.Dist.LEXIS 7162, at *2 (N.D.Ill.1995), Plaintiffs argue that the allegedly improperly proffered testimony should be excluded. Presumedly, Plaintiffs rely on Federal Rule of Civil Procedure 37(c)(1), which allows a Court to exclude evidence that was not properly disclosed under Rule 26(a). *See* Fed. R.Civ.P. 37(c)(1) (allowing a court to exclude evidence when the non-disclosing party was not substantially justified in failing to disclose and the opposing party incurred some harm).

The Court first looks to the nature of the Millers' testimony within the definition of the Federal Rules of Evidence. The fact that a person has expertise does not lead to the conclusion that the person may be offered as an expert trial. (*Cf.* Order Den. Def.'s Mot. for Disqualification and Mot. in Limine (discussing the expert standard and allowing Plaintiffs' expert to testify as a political scientist after a particularized inquiry).) Nor does the fact that a person has expertise mean that the person *must* be offered as an expert at trial. *See Teen–Ed v. Kimball*

*Int'l,* 620 F.2d 399 (3d Cir.1980). Federal Rule of Evidence 701 provides that a witness not testifying as an expert may offer his opinion only if it is "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue." Defendant proffers the Millers "to testify concerning how the study was written and how the conclusions were formulated." (Def.'s Resp. at 5.) The Millers have opinions rationally based on their perceptions of the study, since they were the individuals who conducted the study. Their testimony could be helpful to a clear understanding of the facts at issue, since the methods of the study are undisputedly at the center of the controversy in this case. Any personal information the Millers could convey would be welcome to the factfinder, and they qualify as lay witnesses.

Plaintiffs argue that the Millers and the study that they conducted should be excluded since their testimony would be scientific or technical, regardless of the fact that they are qualified as lay witnesses. Defendant rebuts that their testimony would not be scientific because it would be based only on the facts as the Millers observed them, not on scientific theories. In *United States v. Wells,* 211 F.3d 988 (6th Cir.2000), the Sixth Circuit allowed two treating physicians to testify as fact witnesses, rather than as expert witnesses. The defendants argued that the district court erred by allowing the physicians to render expert opinions regarding treatment even though they had not been qualified as experts and had not provided summary reports as required by Federal Rule of Civil Procedure 16(a)(1)(E). *Id.* at 997–98. The doctors' testimony established that a person central to the litigation was cancer-free and that neither doctor prescribed medication for that person during the relevant period. Over defendants' objections, the district judge found that both doctors testified as fact witnesses, and not as experts, and the Sixth Circuit subsequently affirmed, noting that the physicians testified to their first-hand observations and treatment. *Id.* at 998 (citing *Richardson v. Consol. Rail Corp.,* 17 F.3d 213, 218 (7th Cir.1994) (stating that doctor is not an expert if his testimony is based on observations made in course of treatment, not acquired for purposes of trial, and based on personal knowledge); *Williams Enters., Inc. v. Sherman R. Smoot Co.,* 938 F.2d 230, 233 (D.C.Cir.1991) (stating that a broker with specialized knowledge may offer opinion as lay witness as long as he had personal knowledge of facts)).

In *Teen–Ed v. Kimball International,* the Third Circuit affirmed that a lay opinion from the plaintiff's accountant and bookkeeper was proper, even though he might have been able to qualify as an expert witness. 620 F.2d at 403. The accountant's personal knowledge of the plaintiff's balance sheets was clearly sufficient to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of Teen–Ed's books. *Id.* The Court held that the accountant's expertise on the use of accepted accounting principles in the calculation of business losses did not prevent his testifying on the basis of his personal knowledge of appellant's records. *Id.* Correspondingly, the Court of Appeals for the District of Columbia held that just because a broker based his opinion on specialized knowledge and might have been able to offer his opinion as an expert does not mean he is required to do so. *Williams Enters.,* 938 F.2d at 233–34. As long as he had personal knowledge of the facts, he was entitled to draw conclusions and inferences from those facts, regardless of whether he applied any specialized expertise. *Id.*

The proposed testimony of the Millers falls within this paradoxical class of lay witness testimony because they intend to testify about their personal knowledge gained while conducting the disparity study. Since Defendant does not proffer them for testimony beyond the personal knowledge allowed under Federal Rule of Evidence 701 for lay witnesses, the Millers must not submit an expert report or follow other expert procedures.

The fact that the Millers were not retained as consultants for this litigation is pivotal to the Court's determination. Rule 26(b)(4) allows a party to depose "any person who has been identified as an expert whose opinions

may be presented at trial" to propound interrogatories or depose "an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." Fed. R.Civ.P. 26(b)(4). The Millers have not been presented as an expert nor do Plaintiffs argue that they have been specially retained for litigation.[2] The Millers, doing business as DJMA, conducted a study for the Memphis City Council nearly a decade ago, long before the commencement of this action. Plaintiffs argue on the basis of that experience alone, the Millers are experts.

The introductory language of the 1970 Federal Rules contained language providing that discovery of expert information "may be obtained only" as set out in that rule. Fed. R.Civ.P. 26(b)(4) (1970). "No provision was made anywhere in the rule for an expert who was informally consulted in preparation for the trial but who was never retained or specially employed." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2033 at 455 (1994 & 2003 pocket part).[3] It follows that discovery of those individuals is improper. The Millers conducted a disparity study at behest of the City's legislative body and not in preparation for defending this litigation. While Plaintiffs equate the evidence collected by the City Council for factfinding in legislation and the evidence collected by the City for litigation, the Court will not. The Millers were not retained for litigation.

Finally, the classification of the Millers' as lay witnesses complies with the policy outlined in the Federal Rules. As the Advisory Committee wrote of the 2000 Amendment to Federal Rule of Evidence 701,

> [t]he amendment incorporates the distinctions set forth in *State v. Brown*, 836 S.W.2d 530, 549 (1992), a case involving former Tennessee Rule of Evidence 701, a

rule that precluded lay witness testimony based on "special knowledge." In *Brown*, the court declared that the distinction between law and expert witness testimony is that lay testimony "results from a process or reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." The court in *Brown* noted that a lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma.

The proposed testimony of the Millers is closer to lay witness testimony than expert testimony. Therefore, allowing the Millers to testify as lay witnesses preserves the distinction between lay and expert testimony as defined by the Rules.

The Millers may testify as lay witnesses because they were not retained for litigation, have personal knowledge of the events at issue, and may disclose information that would be helpful to a factfinder. Accordingly, the disparity study is not an improperly proffered expert report. The City did not violate the discovery rules by not naming the Millers as experts, and Plaintiffs were not prejudiced or damaged as a result. Therefore, it would be inappropriate for the Court to award damages or otherwise sanction the City at this stage.

### III. Conclusion

Plaintiffs have failed to show that the MWBE disparity study should be excluded. Accordingly, Plaintiffs' motion in limine is **DENIED.**

---

**2.** DJMA was also a third party defendant for a time, but it has been dismissed. (*See* Order of Dismissal as to D.J. Miller & Assoc. Only.) This fact would lean against DJMA's status as an expert, since DJMA is less likely to have been retained professionally by the City if it was once defending a claim brought by the City.

**3.** "Although the introductory language mentioned above was deleted in the 1993 amendments, there is no reason to believe that the Advisory Committee meant to change the treatment of this issue." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2033 at 455 (1994 & 2003 pocket part).