NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 05a0358n.06
Filed: May 5, 2005

No. 03-6477

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| ANDRE JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

BEFORE:     BATCHELDER and COLE, Circuit Judges; RUSSELL, District Judge[*]

      **RUSSELL, District Judge.**   Defendant-Appellant Andre Johnson appeals his conviction and sentence after a jury trial on charges of attempted distribution and possession with intent to distribute crack cocaine.  Mr. Johnson argues that the district court erred (1) in allowing 404(b) testimony; (2) in admitting a revised drug report; (3) in denying his motion for judgment of acquittal; and (4) in two sentencing issues: calculation of the drug weight and enhancement  for possession of a firearm.

      During October 2001, Tennessee Bureau of Investigation Agent Kenny Blackburn and Detective John H. Jones of the Murfreesboro Police Department began the drug

---

[*]Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

investigation leading to Mr. Johnson's arrest. On October 12, 2001, Agent Blackburn called Mr. Johnson and ordered one ounce of crack cocaine. Then, Agent Blackburn met Mr. Johnson at the Speedway gas station where Agent Blackburn delivered $1,200 to Mr. Johnson and received a bag containing crack cocaine. Agent Blackburn went back to Mr. Johnson's car and told him that the crack cocaine weighed only half an ounce instead of one ounce. Mr. Johnson left and came back with the rest of the crack cocaine.

Agent Blackburn called Mr. Johnson several more times and ordered crack cocaine. Each time Mr. Johnson would arrive in a Chevrolet Corsica, which was registered to Mr. Johnson. On October 23, 2001, Agent Blackburn called Mr. Johnson and asked to buy two ounces of crack cocaine for $2200. The buy money was photocopied and Agent Blackburn was equipped with audio and video taping devices. Mr. Johnson arrived in the same Chevrolet Corsica. Agent Blackburn dropped the money in the backseat and picked up the crack cocaine as was typical of their drug deals. On this occasion, Mr. Johnson demanded an additional $200 for the deal. Agent Blackburn returned to his car and gave the $200 to Mr. Leatrice Malone who was the passenger in Mr. Johnson's car. The crack cocaine was in two baggies and weighed 53.3 grams. At the time of buy, the crack cocaine was still "pretty wet," meaning that it had been recently manufactured. Three months after Agent Blackburn bought the crack cocaine, the TBI lab analyzed it and determined that it weighed 33.15 grams. The October 23, 2001 transaction formed the basis for counts 1 and 2 of the indictment.

On October 25, 2001, agents searched Mr. Johnson's residence at 517 Lilly Lane. During

the search, they found 264 grams of cocaine, a bag containing 14.3 grams of crack cocaine, a set of electronic scales with cocaine residue, pots and pans with cocaine residue, and other items used for the manufacture of crack cocaine. In addition, they found a loaded 9mm pistol in the master bedroom closet and a sock with nineteen 9mm bullets in it. They also found $7000 in a bedroom drawer, including the money used in the October 21, 2003 buy.

On January 28, 2002, TBI Forensic Chemist Donna Flowers tested the substance purchased on October 23, 2001 and determined it was cocaine that weighed 33.15 grams. For a federal drug prosecution, unlike a state prosecution, the report must specify whether it was cocaine or cocaine base. When Mr. Johnson decided not to plead guilty, the substance was sent to the laboratory to determine whether it was cocaine or cocaine base. On March 3, 2002, Ms. Flowers analyzed the substance again and determined that it was cocaine base but she did not weigh it again.

Because there was a discrepancy between Agent Blackburn's drug weight determination of 53.3 grams and Ms. Flowers's determination of 33.15 grams, Ms. Flowers was called to testify about the discrepancy. She testified that because the crack cocaine was wet when weighed in October, it was likely that 40% of the weight was lost due to solvent and water evaporation before it was weighed in January. In court, the substance including the baggies weighed 34.7 grams.

## II.

404(b) Evidence

Mr. Johnson's first argument is that the district court erred in allowing 404(b) testimony.

Federal Rule of Evidence 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..." At trial, the district court allowed testimony about the October 12, 2001 drug purchase, which was not a basis for any of the counts in the indictment, to show "motive, opportunity, knowledge, location, identity and intent to distribute drugs." Even though the October 23, 2001, purchase was videotaped, Mr. Johnson was not recognizable. Therefore, the prosecution was using Agent Blackburn's testimony to show that Agent Blackburn could identify Mr. Johnson, prove Johnson's opportunity to sell drugs, and to show Johnson's intent to distribute the drugs.

The standard of review for a district court's evidentiary determination under Federal Rule of Evidence 404(b) is abuse of discretion. *United States v. Copeland*, 321 F.3d 582, 595 (6th Cir. 2003). To constitute an abuse of discretion, the reviewing court must be firmly convinced that a mistake has been made, such as when a district court relies on an erroneous finding of fact, uses an erroneous legal standard, or improperly applies the law. *United States v. Carney*, 387 F.3d 436, 449 n.9 (6th Cir. 2004). The district court must use the following three-part test to determine whether to admit Rule 404(b) evidence:

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the

probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). To determine whether the evidence is probative of a material issue other than character it must be (1) offered for an admissible purpose; (2) material and (3) "probative with regard to the purpose for which it is offered." *Id.*

Here, the government satisfies the first prong because both Agent Blackburn and Detective Jones testified that the October 12, 2001 drug buy occurred. The evidence satisfies the second prong because it was being offered to prove intent, identity, and opportunity, which are in issue in the case and are probative as to whether Mr. Johnson committed the crimes charged in this case. When the crime is possession with intent to distribute, the government may use 404(b) evidence to prove the statutory element of specific intent, making intent a material issue. *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002). Here both counts one and three charge possession with intent to distribute. Identity is in issue as well because Mr. Johnson could not be identified from the videotape. Therefore, Agent Blackburn's testimony showed that he was able to recognize Mr. Johnson's voice, face, and car because of his familiarity with them from the October 12, 2001 drug transaction. Finally, the evidence shows opportunity, or in other words, the defendant has the special ability, capacity or knowledge to sell drugs. *United States v. Maravilla*, 907 F.2d 216, 222 (1st Cir. 1990).

To determine if the evidence is probative of intent to distribute, "we look to whether the

evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Id*. In this case, Mr. Johnson sold drugs to Agent Blackburn twice within 11 days. On both occasions, Agent Blackburn called Mr. Johnson, arranged to meet him in a parking lot, and bought from him. These two buys were substantially similar and reasonably near in time.

The last step in the 404(b) analysis is to determine whether the probative value of the evidence is substantially outweighed by the potential prejudicial effect. *See* Fed. R. Evid. 403. The district court found that the probative value substantially outweighed the prejudicial effect and also gave a limiting instruction to the jury. Mr. Johnson has presented no evidence that the probative value was substantially outweighed or that the district court abused its discretion. This court concludes that the district court did not abuse its discretion in admitting the 404(b) evidence.

Late Discovery

Mr. Johnson argues that the district court erred in admitting into evidence a revised drug report. Mr. Johnson claims that he did not receive the report until six days before trial and the district court should have suppressed this report pursuant to Federal Rule of Criminal Procedure 16(d)(2)(C). Federal Rule of Criminal Procedure 16(d)(2) states:

If a party fails to comply with this rule, the court may:
(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
(B) grant a continuance;
(C) prohibit that party from introducing the undisclosed evidence; or
(D) enter any other order that is just under the circumstances.

We review the district court's evidentiary rulings under Fed. R. Crim. Pro. 16 for abuse of discretion. *United States v. Muhammad*, 948 F2d 1449, 1454 (6th Cir. 1991). *See also United States v. Wells*, 211 F.3d 988, 996 (6th Cir. 2000).

Mr. Johnson complains that the revised report listed the drugs as being cocaine base while the previous report lists the drugs as being cocaine. Until February 10, 2003, the government believed that Mr. Johnson was going to plead guilty. The drugs were re-submitted to the laboratory on February 20, 2003 and the drugs were tested on March 3, 2003. The government received the laboratory report on March 13, 2003, and defense counsel received them on March 14, 2003.

Mr. Johnson was indicted on possession with intent to distribute and attempt to distribute cocaine base and the first TBI lab report indicated that the substance was rock-like and contained cocaine. The TBI's first report did not distinguish cocaine from cocaine base because it is not necessary for state criminal charges but is necessary for federal charges. The lab report became important once Mr. Johnson changed his mind on his intent to plead guilty.

In *United States v. Tarwater*, 308 F.3d 494, 516 (6th Cir. 2002), the expert gave defense counsel a revised report the day before trial, and we found that the district court did not abuse its discretion when it denied defendant's motion to dismiss or strike. *Id*. We based our decision on two factors: 1) the defendant was not surprised by the revised report; and 2) the defendant did not show that outcome of the case would have been different had he received the report earlier. *Id*. Likewise, in this case, Mr. Johnson was

not surprised because he knew that he was indicted for "cocaine base" not cocaine. The police found materials in Mr. Johnson's kitchen used to "cook" cocaine into rock form, or cocaine base, and the reports all indicated that the drugs were in rock form. Additionally, Mr. Johnson has not shown how that the revised report has prejudiced the outcome of his case.

Mr. Johnson alleges that the reports came too late for him to have an independent test done. Mr. Johnson, however, did not ask for a continuance under Fed. R. Crim. Pro. 16(d)(2)(B) to do independent testing, but instead asked for the evidence to be suppressed under Fed. R. Crim Pro. 16(d)(2)(C). When a defendant does not ask for a continuance, the district court should not exclude the evidence unless the government has willfully or negligently violated discovery orders. *Muhammad*, 948 F.2d at 1455. Mr. Johnson cannot show any misconduct on the part of the government because the government gave him the revised report the day after it received it. The government did not have a need to request a revised report until after Mr. Johnson changed his mind about pleading guilty. The district court did not abuse its discretion in admitting the revised report.

Motion for Judgment of Acquittal

Pursuant to Fed. R. Crim. Pro 29, Mr. Johnson filed a motion for judgment of acquittal, and the district court denied this motion. Mr. Johnson argues that the district court erred because Mr. Johnson was charged with 50 grams of drugs but at trial the drugs only weighed 33.15 grams. We review the district court's decision *de novo*. *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004). This court must determine "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

Mr. Johnson argues that the government did not carry its burden of proving that the weight of the drugs was 50 grams or more as charged in counts one and two of the indictment. The drugs weighed 53.3 grams at the time of Mr. Johnson's arrest and weighed 33.15 grams at the time of the initial TBI lab report. Ms. Flowers, a forensic chemist with the TBI, testified that the disparity in weight was reasonable because over three months had elapsed between the arrest and the testing so "that 40% quantity of water or solvents could have evaporated" causing the crack cocaine to weigh less. The weight of the drugs is determined at the time of the offense and will include any solvents used to make the drugs. *Kinnard v. United States*, 313 F.3d 933, 936 (6th Cir. 2002)(amount at time of offense was 50.3 grams but was only 38 grams at some later time; conviction for 50 grams was proper); *Chapman v. United States*, 500 U.S, 453, 460 (1991) (finding that "dilutant, cutting agent, or carrier medium" is included in the weight of cocaine for sentencing purposes). The jury found that the weight of drugs was 50 grams or more, and it was proper for a rational trier of fact to find the drugs weighed 50 grams or more with the evidence that was before them.

Sentencing Issues

Mr. Johnson argues that the district court improperly calculated the amount of crack cocaine and improperly assessed a two level firearm enhancement. Additionally, Mr.

Johnson sent in a letter brief arguing that his Sixth Amendment rights had been violated by the mandatory guidelines sentence under *United States v. Booker*, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005). First, the jury not the judge found the quantity of drugs to be 50 grams or more. Second, while the district court found that Mr. Johnson possessed a firearm for the firearm enhancement under U.S.S.G § 2D1.1(b)(1), this weapons "enhancement" did not actually add time to Mr. Johnson's sentence because he received the statutory mandatory minimum sentence of 20 years.

For sentencing purposes, the proper weight is the amount at the time of the offense including any "dilutants." *Chapman*, 500 U.S. at 460. The jury properly found that Mr. Johnson's drugs weighed 50 grams or more. On counts one and two of the indictment, possession with intent to distribute and attempt to distribute 50 grams or more of cocaine base, Mr. Johnson was sentenced to concurrent terms of 20 years. On Count Three, possession with intent to distribute five grams or more of cocaine base, Mr. Johnson was sentenced to a concurrent term of 10 years. Under 18 U.S.C. § 841(b), the penalty for the crimes alleged in counts one and two is "a term of imprisonment which may not be less than 10 years or more than life," but if the defendant has a prior drug felony conviction, the penalty is "a term of imprisonment which may not be less than 20 years and not more than life imprisonment." *Id*. Mr. Johnson has a prior felony drug conviction so that the 20 year mandatory minimum applied.

A panel of this circuit has found that *Booker* does not apply when the defendant has been sentenced to the mandatory minimum. *United States v. Joiner*, 2005 Fed.App.

-10-

0106N, 683 (6th Cir. 2005). The other circuits that have also addressed whether *Booker* applies have found that when a defendant receives a mandatory minimum sentence under a statute, *Booker* does not apply. *United States v. Childs*, --- F.3d ----, 2005 WL 820289 *2 (8th Cir. 2005); *United States v. Painter,* 400 F.3d 1111, 1111 (8th Cir.2005); *United States v. Rojas-Coria*, 401 F.3d 871, 874 (8th Cir. 2005); *United States v. Bach*, 400 F.3d 622, 634 (8th Cir. 2005); *United States v. Moore*, 401 F.3d 1220, 1222 n.1 (10th Cir. 2005) (refusing to do a *Booker* plain error analysis); *United States v. Forbes*, 2005 WL 481605 (2d Cir. 2005) (finding the mandatory minimum sentence under section 924(c) did not need to be remanded under *Booker*, but his other conviction did); *United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir. 2005) (" A mandatory minimum sentence imposed as required by a statute based on facts found by a jury or admitted by a defendant is not a candidate for *Booker* error."); *United States v. Sharpley*, 399 F.3d 123, 127 (2d Cir. 2005) (finding when a calculated guidelines sentence was less than the statutory minimum and the district court gave the statutory minimum, it was harmless error). Likewise, we find that *Booker* does not apply in Mr. Johnson's case.

III.

We **AFFIRM** the judgment and sentence of the district court.