**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0389n.06**
**Filed: May 12, 2005**

**No. 03-2596**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff-Appellee, )<br> )  ON APPEAL FROM THE<br>v. )  UNITED STATES DISTRICT<br> )  COURT FOR THE EASTERN<br>CHARLES RUCKER, )  DISTRICT OF MICHIGAN<br>    Defendant-Appellant. ) | |

Before:    BOGGS, Chief Judge; COOK, Circuit Judge; and BEER, District Judge.[1]

    PER CURIAM.  Charles Rucker appeals his sentence of 120 months in prison for transporting over 1000 kg of marijuana for the Theodore Chandler drug organization in Detroit. He contends that the government improperly unilaterally withdrew from a signed plea agreement under Rule 11, Federal Rules of Criminal Procedure, forcing him to plead guilty to a crime carrying a 10-year statutory minimum sentence.  He also argues that he should have received a safety-valve departure under United States Sentencing Guideline § 5C1.2(a) or a downward departure for substantial assistance under Guideline § 5K2.0.  The district judge denied all departure motions and sentenced Rucker to the mandatory minimum sentence.  We affirm Rucker's sentence.

---

    [1] The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

**I**

Charles Rucker was a struggling small-time trucking company owner in Detroit when Theodore Chandler approached him about carrying loads of marijuana in his trucks from Arizona back to Detroit. According to testimony at the sentencing hearing, Chandler had been importing marijuana from Arizona since approximately 1999 until his arrest in August 2002. Rucker seems to have driven or provided his trucks and drivers for Chandler from 1999 until his arrest in March 2002. Each time his trucks carried between 600-2500 pounds of marijuana.

In February 2002, a truck owned by Rucker was stopped in Las Vegas, en route from Detroit to Arizona, and was found to be carrying almost $2 million in cash. In March 2002, Rucker himself was stopped in Missouri by the state Highway Patrol and was found to be hauling 1236 kg of marijuana in his trailer. Rucker and the second driver, Alonzo Golston, waived their *Miranda* rights and gave full confessions to transporting knowingly thousands of pounds of marijuana for Chandler. The two drivers then participated in a controlled delivery of the marijuana to members of the Chandler organization in Detroit, resulting in the arrest of several more members of the conspiracy.

Rucker was indicted on one count of conspiracy to possess with intent to distribute and to distribute 1000 kg or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1). After confessing to his involvement in the Chandler organization and participating in the controlled delivery, Rucker was debriefed five times by federal agents. Throughout the debriefings, the agents voiced doubts about Rucker's truthfulness. The Government contends that Rucker kept

changing his story, admitting one time to having driven three trips, another time to two. At the sentencing hearing he told the judge that the trip on which he was arrested was his first trip.

Notwithstanding those doubts, the Government agreed to a Rule 11 plea agreement with Rucker, stipulating to a sentence of no more than 98 months, based on three trips transporting approximately 1200 kg of marijuana on each trip. The plea worksheet specified a base offense level of 34 calculated from the transport of 3400 kg of marijuana. It then provided for a two-level safety-valve departure and a three-level departure for acceptance of responsibility. The plea agreement sought no leader/organizer enhancement. In return, Rucker was obligated to provide complete and truthful information and to take a polygraph test at the request of the Government. The agreement included the provision: "It is exclusively within the government's discretion to determine whether defendant has provided substantial assistance." The agreement also provided: "If at any time the defendant . . . fails to comply with the terms of the agreement, the government is released from its promises under this agreement . . . ." The Government signed the agreement on February 25, 2003; Rucker signed it the following day.

Two days later, the Government withdrew from the plea agreement. Feeling that he had provided too much information that could be used against him at trial, Rucker pled guilty on April 7, 2003 to one count of conspiracy to possess with intent to distribute and to distribute 1000 kg or more of marijuana, a crime carrying a statutory sentence of 10 years to life. The Government explained that it withdrew the plea agreement because Rucker failed to live up to the plea agreement. It pointed out that because he kept changing his story, the polygraph operator could never administer the polygraph test that the plea agreement gave it the right to

–3–

require, because there was no consistent story the veracity of which the polygraph could test. The Government also said that in interviews with other members of the conspiracy it acquired more information about the extent of Rucker's involvement and felt that Rucker had not been adequately forthcoming. In response, Rucker's attorney pointed out at the sentencing hearing that the Government already questioned Rucker's truthfulness before it signed the plea agreement and that it did not learn anything new from Rucker in the 24-48 hours between signing the agreement and withdrawing it that would have led it to change its mind about Rucker's testimony. The Government does not dispute this characterization. Therefore, any new information had to have come from some other members of the conspiracy, all of whom admittedly had an incentive to enhance Rucker's involvement in order to downplay their own.

At the plea hearing, Rucker objected to the amount of drugs for which he was found responsible, and the judge decided to hold an evidentiary hearing. The Government called the FBI agent in charge of the investigation. He testified about a number of interviews with members of the conspiracy who implicated Rucker in numerous trips to transport marijuana. The Government also called two members of the organization, including one of Rucker's drivers, who testified to making three trips to Arizona to pick up marijuana on Rucker's instructions and in a truck provided by Rucker. Rucker's attorney strenuously cross-examined each witness.

After an extensive hearing, the judge sentenced Rucker to the 120-month statutory mandatory minimum. Rucker timely filed this appeal.

**II**

We first consider Rucker's request for specific performance of the withdrawn plea agreement. Plea agreements are contractual in nature, and we use traditional principles of state contract law to interpret and enforce them. *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987); *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991). We review *de novo* questions of whether the Government's conduct with regard to the plea agreement violated the law. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). However, we review questions of fact regarding the content of the agreement for clear error. *Ibid*.

Rucker contends that under applicable Michigan law, the Government cannot unilaterally withdraw a plea agreement after the defendant has acted in reliance upon it. *People v. Jackson*, 480 N.W.2d 283, 286-87 (Mich. Ct. App. 1991). The first question, then, is whether Rucker's agreement had been executed. A plea agreement is not executed until the court has accepted it. In *Mabry v. Johnson*, the Supreme Court held that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." 467 U.S. 504, 507 (1984).

The Government may nonetheless be bound by the agreement if the defendant detrimentally relies on it. *Wells*, 211 F.3d at 994 n.3 ("If [the Appellant] substantially relied on the plea agreement, or was prejudiced by providing information which the government used in its ongoing investigation or at trial, we think that the contract would be–in the absence of breach by [the Appellant]–binding on the government."). Rucker, accordingly, argues that he detrimentally relied upon the plea agreement.

The flaw in Rucker's argument is that he does not explain in what way he relied. He could mean that in his pre-agreement interviews he relied on the hope that he would get a plea agreement, or he could mean that he relied on the agreement after he signed it, or he could mean that his prior reliance and resultant cooperation forced him to plead guilty after it was withdrawn. The first form of reliance is unlikely. Rucker gave his most significant assistance at the time of his arrest when he confessed to transporting drugs for Chandler and when he completed the delivery for federal agents. At that point, he could rely upon no promises of a future agreement.

He later met with agents several times and gave them information, much of which they disbelieved. It is possible that at these meetings, the parties discussed what form a plea agreement might take, but the plea agreement that was eventually signed had an integration clause, so Rucker can introduce no evidence of side promises outside the four corners of the agreement. *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000) (integration clause prevents defendant from asserting that the Government made promises not contained in plea agreement).

Furthermore, as Rucker pointed out, the Government obtained no information from him in the short period between signing the agreement and withdrawing it, so he can point to no reliance during that interval. In addition, the plea agreement contained the provision: "The U.S. Attorney's office may also withdraw from the agreement if it learns prior to sentencing of information inconsistent with the stipulated guidelines calculations." The calculations were predicated on the transport of 3400 kg of marijuana. Information received from other witnesses pointed to Rucker's involvement in the transport and distribution of over 10,000 kg of marijuana.

Under the terms of the agreement, therefore, the Government had a right to withdraw, regardless of the origin of its information.

Rucker also did not rely on the Government's promises in entering his guilty plea without a plea agreement in place. The Government withdrew the agreement at the end of February, and Rucker did not plead until early April. He was hardly blindsided at the time of his plea. At the plea colloquy, the judge ascertained that Rucker knew exactly to what he was pleading:

> THE COURT: You understand there's a minimum sentence on this offense for you of 10 years?
>
> THE DEFENDANT: Yes, I do.
>
> MR. NACHT [counsel for Defendant]: Your Honor, I will be filing a motion for downward departure under 5K2.0. My client has provided substantial assistance and cooperation, but the government has chosen not to file a 5K1, but we will go ahead anyway and file a motion pursuant to U.S. v. [Koon] with this Court.
>
> MR. LEMISCH [prosecutor]: And as long as counsel has chosen to put that statement on the record, Your Honor, the government disputes that Mr. Rucker has provided substantial assistance.
>
> THE COURT: Well, I think what Mr. Rucker has to understand is that those motions, the motion your lawyer is talking about, do not generally succeed.
>
> MR. NACHT: I have informed my client that he should plead guilty under the presumption that the motion would fail, that he will serve at least a mandatory minimum of 10 years, and could serve based on the quantity alleged by the government many more years than that.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Yes.

(Ellipses omitted).

In this, Rucker's case mirrors closely the situation with which the Supreme Court dealt in *Mabry*. In that case, the prosecutor offered defendant a 21-year sentence to run concurrently with the sentences he was at that time already serving. The defendant agreed to plead guilty based on this offer. The next day, before defendant had acted in reliance on the agreement, the prosecutor told defendant he had made a mistake, withdrew the former offer, and substituted an offer of a 21-year consecutive sentence. Defendant refused, went to trial, a mistrial was declared after two days, plea negotiations resumed, and defendant ended up accepting the second offer. The judge imposed the 21-year consecutive sentence and defendant appealed. 467 U.S. at 505-06. The Supreme Court found that defendant's plea was not induced by the withdrawn offer. It held that the defendant:

> pleaded guilty with the advice of competent counsel and with full awareness of the consequences–he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack. Respondent's plea was thus in no sense the product of government deception; it rested on no "unfulfilled promise" . . . .

*Id.* at 510.

Finally, Rucker contends that by the time the Government withdrew the plea agreement, he had provided too much information to permit him to go to trial, so he had no choice but to plead guilty. We agree with the lack of sympathy that other courts have shown toward this argument. These courts have pointed out that if a defendant gave information involuntarily because he only did so in expectation of a plea bargain that never materialized, that information could be suppressed. *See*, *e.g.*, *United States v. Kettering*, 861 F.2d 675, 679 (11th Cir. 1988) (defendant's cooperation with Government prior to the withdrawal of the plea agreement "did

not place him in a position where restoration of the status quo ante would be impossible.");

*United States v. Coon*, 805 F.2d 822, 824-25 (8th Cir. 1986) (same).

Furthermore, most of the information used to determine the amount of drugs for which Rucker was sentenced came from other witnesses and from the shipment he was transporting when he was arrested. The Government did not rely on Rucker's own statements in establishing the amount of drugs he transported, because it felt his testimony was untruthful. Therefore, Rucker cannot argue that he "was prejudiced by providing information which the government used in its ongoing investigation or at trial." *Wells*, 211 F.3d at 994 n.3.

Rucker also appeals the use of hearsay evidence as a basis for the refusal of the safety-valve reduction and for setting his offense level at 34. We review findings of fact upon which sentencing decisions are made under a clearly erroneous standard. *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990); 18 U.S.C. § 3742(e) ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous . . . ."). A finding of fact will only be held to be clearly erroneous when the reviewing court has a "definite and firm conviction that a mistake has been committed." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)) (additional citations omitted).

The rule is well established that "[t]he district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process."

*Robinson*, 898 F.2d at 1115. "'[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)) (additional citations omitted). *See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

At Rucker's sentencing hearing, the judge did not clearly err in finding that the evidence indicated that Rucker was directly or indirectly responsible for transporting well over the 4500 kg of marijuana described in the presentence report. The court heard testimony from the FBI agent in charge of investigating the Chandler organization and from two members of the organization, including one who had worked as a driver for Rucker. The court allowed Rucker's attorney to cross-examine the witnesses for as long as he wanted, and even helped counsel phrase his questions more clearly. When Rucker's attorney objected that he had not been able to call witnesses, the judge offered to permit him to do so, and suggested that Rucker might want to go to trial instead. It was Rucker who decided in the end to go ahead with sentencing. Based on this testimony, in addition to the 1236 kg with which Rucker was caught, the court found that 4500 kg was an extremely conservative estimate, and that he had sufficient evidence to hold Rucker responsible for over 10,000 kg.

The sentencing hearing testimony led the court to find Rucker responsible for enough drugs to place him at an offense level of 34. Rucker objects to this level. However, the issue

would only be relevant if we were to find that Rucker merited a safety-valve reduction. He did

not, and consequently, we do not need to delve into the offense-level decision because Rucker

pled guilty to conspiracy to possess with intent to distribute and to distribute 1000 or more

kilograms of marijuana in violation of 21 U.S.C. § 841(b)(1)(A)(vii), which carries a *statutory*

mandatory minimum of 10 years. As he was sentenced under the statute, not under the

Guidelines, his offense level, based on the quantity actually found by the judge, is irrelevant.[2]

We note that the district judge did not explicitly rule on the USSG § 5C1.2 safety-valve

motion. *See United States v. Harris*, 397 F.3d 404, 416 (6th Cir. 2005) (remanding where the

district court had failed to rule on a motion for downward departure). However, neither party

raised this issue in their initial briefs, and the failure to present an argument in an appellate brief

waives appellate review. *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997).

We find, in addition, that there is no need for plain error review of this issue because

Rucker was not eligible for a safety-valve reduction, so no injustice will be done. *Cf. United*

---

[2] Rucker was sentenced according to a mandatory minimum statute, and several panels of this Circuit and others have found that, under such a circumstance, *United States v. Booker*, 125 S. Ct. 738 (2005), is not implicated. *See*, *e.g.*, *United States v. Johnson*, 2005 WL 1059276, at *5 (6th Cir. May 5, 2005) (unpublished); *United States v. Joiner*, 123 Fed. App. 681, 683 (6th Cir. 2005); *United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir. 2005) ("A mandatory minimum sentence imposed as required by a statute based on facts found by a jury or admitted by a defendant is not a candidate for *Booker* error."); *United States v. Forbes*, 2005 WL 481605 (2d Cir. 2005); *United States v. Bach*, 400 F.3d 622, 634 (8th Cir. 2005); *United States v. Cardenas*, __ F.3d __, 2005 WL 1027036, at *2 (9th Cir. May 4, 2005) ("*Booker* does not bear on mandatory minimums"); *United States v. Moore*, 401 F.3d 1220, 1222 n. 1 (10th Cir. 2005). The judge did not, as Rucker's attorney asserts "merely impose[] a sentence in the middle of the guideline range . . . ." Instead, the judge noted several times that he was bound by the mandatory minimum, and that was his basis for sentencing Rucker.

*States v. French*, 974 F.2d 687, 697 (6th Cir. 1992) (objections to sentence not raised at district court are waived on appeal unless failure to review results in manifest injustice). Under USSG § 5C1.2(a), a defendant who meets five criteria may be eligible for the court to impose a sentence within the relevant guidelines range even if that range falls below a statutory mandatory minimum. The criteria mandate that (1) the defendant have no more than one criminal history point; (2) the defendant did not use or threaten violence or possess a dangerous weapon; (3) the offense did not result in death or serious injury to anyone; (4) the defendant was not a leader, organizer, supervisor, or manager and was not engaged in a continuing criminal enterprise; and (5) "[n]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." USSG § 5C1.2(a)(1)-(5). The defendant bears the burden of showing eligibility for the safety valve by a preponderance of the evidence. *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001).

Rucker meets the first four criteria. Although the Government sought a leader/organizer enhancement, the district judge specifically rejected that enhancement. That leaves only the question of whether Rucker gave truthful testimony prior to the sentencing hearing. The Government asserted that he did not, and for this reason they withdrew the plea agreement. Rucker bears the burden of demonstrating his eligibility for the safety valve, and since to get it "'he must truthfully supply details of his own culpability,'" which he does not prove that he did,

the evidence on record is sufficient to find that he was not eligible. *Id.* at 460 (quoting *United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996)).

Last, Rucker contends that the judge improperly denied his USSG § 5K2.0 motion for downward departure. The judge denied the motion because he believed he did not have the authority to grant it without a substantial assistance motion from the Government under 18 U.S.C. § 3553(e). Although a district court's discretionary decision not to depart is ordinarily not appealable, we review *de novo* a district court's determination that it lacked authority to depart. *United States v. Burke*, 237 F.3d 741, 743 (6th Cir. 2001); *United States v. Thomas*, 49 F.3d 253, 260 (6th Cir. 1995).

> Section 5K2.0(a)(3) of the Sentencing Guidelines, permits a court to depart:
>
> in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense.

Rucker argues that his assistance to the federal agents, in particular in completing the controlled delivery after his arrest, was so extraordinary that it took him out of the "heartland" of cases and made him eligible for a § 5K2.0 departure under *Koon v. United States*. 518 U.S 81, 98 (1996) ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.").

We have previously determined that the only situation in which a district court can depart below a mandatory minimum is upon motion of the Government for substantial assistance, pursuant to 18 U.S.C. § 3553(e). *Burke*, 237 F.3d at 743 ("All courts addressing whether this

represents the exclusive route to depart below statutory minimums have concluded that it is.");

*accord United States v. O'Dell*, 320 F.3d 674, 682 (6th Cir. 2003) (Nelson, J., concurring).

Section 3553(e) reads in pertinent part: "Upon motion of the Government, the court shall have

the authority to impose a sentence below a level established by statute as a minimum sentence so

as to reflect a defendant's substantial assistance in the investigation or prosecution of another

person who has committed an offense."

Rucker sought a downward departure not through § 3553(e), but rather through the

Sentencing Guidelines. Yet in *Burke*, we opined that "[t]here is no indication . . . that downward

departures . . . may apply to sentences generated from separate sources of law, such as

mandatory minimum sentences, in the absence of specific statutory authority." 237 F.3d at 745.

Thus § 5K2.0 cannot be used to generate a departure from a statutory mandatory minimum.

Consequently, we find that the district judge did not err in holding that he had no discretion to

grant Rucker's § 5K2.0 departure motion.

For the foregoing reasons, we **AFFIRM** the sentence of the district court.