**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0814n.06**
**Filed: November 6, 2006**

**No. 06-5112**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GENE LEACH, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Appellant. | ) | |

Before: RYAN, BATCHELDER and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Gene Leach pleaded guilty to being a felon in possession of ammunition, for which the district court imposed a 21-month prison sentence. At sentencing the district court did not abuse its discretion in permitting Leach's estranged wife to testify about his continued dangerousness. But it did err in declining to vacate the second and third counts of Leach's conviction as duplicative and in failing to enter just one judgment on the first count. We accordingly affirm in part, reverse in part and remand the case to correct this error.

I.

On August 25, 2005, Leach pleaded guilty to a three-count indictment for violating the federal felon-in-possession statute. *See* 18 U.S.C. § 922(g). All three counts stemmed from ammunition that officers seized from Leach during a lawful search of his vehicle on June 21, 2005.

At sentencing, Leach moved for a downward departure. He presented medical evidence along with his own testimony that it would be difficult for him to "get around" and "be treated while in prison." JA 25. Leach's brother testified about Leach's medical condition and pledged that he would keep an eye on him after his release from prison. And Leach's 13-year-old daughter testified that her father had never harmed her and that she hoped to live with him once he was released from custody.

The government did not present any witnesses at the sentencing hearing, but it did note that Leach's estranged wife, Suzanne Leach, was in attendance and wanted to make a statement as a victim of Leach's crime. The court permitted Suzanne Leach to testify. She minimized the importance of Leach's medical condition, saying that Leach was a "very dangerous man," JA 37, that he had "threatened to kill [her]," JA 38, and that "as long as [his] trigger finger works, there are people that are in danger," JA 39.

In sentencing Leach, the district court observed that Leach was "in the midst of a very contentious divorce," JA 45, and that even rational individuals may "resort to the base emotions of anger and violence" when exposed to the "volatility of a divorce, a custody dispute or a property dispute," JA 46. Given these dangers, the court decided "that a probationary sentence . . . [was] not

appropriate." JA 47. But it did grant a three-level downward departure to accommodate Leach's

medical condition, which lowered his offense level to 14 and which led to an advisory guidelines

sentencing range of 18–24 months. The district court imposed a sentence of 21 months, which the

court said was justified by "the threats to [Suzanne] Leach" and "the threats to law enforcement."

JA 48. The district court also imposed two years of supervised release and "a one hundred dollar

special assessment per count for a total of three hundred dollars." JA 49.

## II.

Leach raises two issues on appeal: (1) that the district court should not have permitted

Suzanne Leach to testify at the sentencing hearing and (2) that the district court should have merged

the three counts of the indictment. Because Leach did not raise either argument before the district

court, he must satisfy the requirements of plain-error review. *See* Fed. R. Crim. P. 52(b). He thus

must show "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions

are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4)

the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted); *see also*

*United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). Leach has satisfied these

requirements with respect to one of his appellate arguments but not the other.

## A.

At sentencing, trial courts have considerable discretion to permit the introduction of evidence related to, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also Roberts v. United States*, 445 U.S. 552, 556 (1980) (reiterating "the fundamental sentencing principle that a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come") (internal quotation marks omitted); *United States v. Rucker*, 133 F. App'x 187, 193 (6th Cir. May 12, 2005).

For better or worse, Suzanne Leach's statement at the sentencing hearing plainly was relevant to Leach's "background, character, and conduct." The sentencing judge was permitted to consider that Leach was "in the midst of a very contentious divorce," JA 45, that Suzanne Leach thought that Leach's medical condition was "temporary," JA 46, and that "the threats to [Suzanne] Leach," among other things, might affect the length of any sentence that Leach should receive, JA 48.

It thus makes no difference for our purposes whether Suzanne Leach had "standing" to testify under the Crime Victim's Rights Act, *see* 18 U.S.C. § 3771(a)(4), a point we would have to consider if the district court had *denied* her an opportunity to be heard. No matter whether the Act applies to Suzanne Leach's testimony or not, the fact remains that the Act did not alter (or, more importantly, limit) a district court's traditionally broad discretion to consider "a wide variety of

factors" at sentencing. *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1994) ("Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant."); *Williams v. New York*, 337 U.S. 241, 246 (1949) ("[A] sentencing judge [can] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.").

Nor does it change matters that the district court permitted her to testify because it thought that the Act *required* her to have this opportunity. The fact remains that Suzanne Leach had access to considerable evidence bearing on Leach's sentence. Her daughter led the police to Leach's initial arrest. The presentence report indicated that Leach had previously threatened Suzanne Leach with violence. And the government repeatedly told the district court that "[Suzanne Leach] does want to be heard." JA 35. Under these circumstances, Leach cannot show that any error in permitting her to testify, if indeed it was error, "affect[ed] [his] substantial rights." Fed. R. Crim. P. 52(b). No plain error occurred.

B.

Leach also challenges the court's imposition of special assessments on each of the three counts of his conviction. As the government acknowledges, a defendant who simultaneously acquires and possesses weapons or ammunition does not commit separate crimes under 18 U.S.C. § 922(g). *See United States v. Adams*, 214 F.3d 724, 729 (6th Cir. 2000); *United States v.*

*Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976). Because no evidence shows that Leach separately acquired or stored the ammunition that the officers seized from him, the district court should have merged the three counts of the indictment. That is to say, it should have vacated the second and third counts of the indictment and sentenced Leach on the remaining count while imposing one special assessment of $100. The government to its credit concedes that this error should be corrected, and we see no reason why it should not be.

III.

For these reasons, we affirm in part, reverse in part and remand the case to the district court to correct the error.